UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
------------------------------------------------------------x
THE BRENNAN CENTER FOR JUSTICE AT )
NEW YORK UNIVERSITY SCHOOL OF )
LAW and CHARLES KURZMAN, )
                                                                )     **COMPLAINT**
              Plaintiffs,          )

       v.                               )

UNITED STATES DEPARTMENT OF )
JUSTICE, )
              Defendant.         )
------------------------------------------------------------x

PLAINTIFFS THE BRENNAN CENTER FOR JUSTICE AT NEW YORK UNIVERSITY SCHOOL OF LAW (the "Brennan Center") and CHARLES KURZMAN, Professor of Sociology at University of North Carolina at Chapel Hill, by and through their undersigned counsel,[1] allege as follows:

## NATURE OF THE ACTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202, seeking the immediate processing and release by defendant the United States Department of Justice ("DOJ") of information related to its publicly filed prosecutions of terrorism-related offenses—information that is public on each individual court docket, but which DOJ shields in the one database that aggregates such cases. The information sought is narrow and should be non-

---

[1] Professor Kurzman is proceeding in his individual capacity. The University of North Carolina at Chapel Hill is not a party to this litigation.

controversial.  Plaintiffs simply seek the docket numbers for publicly filed cases that DOJ has classified as related to terrorism.

2.	This information is critical to the public's ability to understand how DOJ fulfills one of its most important responsibilities.  Only if DOJ releases this docket information can the public fully and effectively assess what conduct DOJ classifies as relating to terrorism and how it prosecutes that conduct.  Its release poses no risk to national security, does not make otherwise private personal information public, and would shed light on some of the most important public policy questions of the day.

3.	On January 17, 2018, plaintiffs filed a FOIA Request with the Executive Office for United States Attorneys ("EOUSA"), a component within DOJ, seeking, among other things, court docket information for publicly filed terrorism-related prosecutions and expedited processing (the "Request") (**Exhibit 1**, attached).

4.	On January 24, 2018, DOJ denied plaintiffs' request for expedited processing with the sole explanation that "Data is available online" (**Exhibit 2**, attached).

5.	On February 6, 2018, DOJ issued a final disposition of the Request, which it characterized as a "Partial grant/partial denial," with the sole explanation that "The information you seek is located at the following website: http://www.usdoj.gov/usao/reading_room/data/CaseStats.htm" (the "Denial") (**Exhibit 3**, attached).

6.	On February 22, 2018, plaintiffs appealed the denial of expedited processing and the refusal to release the requested records (the "Appeal") (**Exhibit 4**, attached).[2]  In their

---

[2] The Appeal is attached without its exhibits.  The exhibits to the Appeal that are pertinent to this Complaint have been attached directly to the Complaint.

administrative appeal, plaintiffs explained that the requested court docket information is not, in fact, available online. In addition, plaintiffs explained that releasing the requested records was essential to the public's ability to understand and analyze how DOJ characterizes conduct as terrorism, and how it prosecutes terrorism. DOJ's response to terrorism, both domestic and international, is a critical public policy question. Finally, in their seven-page appeal letter, plaintiffs explained the basis for their appeal, including that release of docket information for all requested cases that terminated in a conviction or guilty plea is clearly mandated by a decision of the United States Court of Appeals for the District of Columbia Circuit, *ACLU v. U.S. Department of Justice*, 655 F.3d 1 (D.C. Cir. 2011). Plaintiffs also explained that a subsequent case, *ACLU v. U.S. Department of Justice*, 750 F.3d 927 (D.C. Cir. 2014), which did not require the release of information for cases that resulted in dismissal or acquittal, does not apply here. Unlike in that case, information about the cases that resulted in dismissal or acquittal here is critical to assist plaintiffs in their effort to understand fully the nature and efficacy of DOJ's terrorism prosecutions.

7. On February 28, DOJ denied plaintiffs' appeal insofar as it sought expedited processing (**Exhibit 5**, attached).

8. On June 4, 2018, DOJ denied plaintiffs' appeal in full, refusing to release the requested records (**Exhibit 6**, attached). DOJ failed to provide any reasoned explanation in response to plaintiffs' appeal letter or to address the applicable case law, other than to state that the request was denied on the grounds that the information sought was exempt from disclosure under FOIA exemptions 6 and 7(C).

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii).

10.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**THE PARTIES**

11.     Plaintiff The Brennan Center for Justice at NYU School of Law is a nonpartisan law and policy institute whose purpose is to improve our systems of democracy and justice. It seeks to hold American political institutions and laws accountable to the ideals of democracy and equal justice for all. As part of this mission, the Brennan Center works to preserve constitutional protections in the fight against terrorism. The Brennan Center is located at 120 Broadway, New York, New York, and 1140 Connecticut Ave., NW, Washington, D.C.

12.     Plaintiff Charles Kurzman is a professor of sociology at the University of North Carolina at Chapel Hill and is a co-director of the Carolina Center for the Study of Middle East and Muslim Civilizations. He has written and published numerous books and articles on terrorism, democracy, and Islam.

13.     Defendant Department of Justice is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The EOUSA is a component of defendant DOJ, from which plaintiffs requested records.

**FACTUAL ALLEGATIONS**

**A.    BACKGROUND**

14.     Many of today's most important public policy questions revolve around the fight against terrorism. It implicates not just the safety of U.S. citizens and U.S. troops, but also core questions about our constitutional democracy (when and how to try terrorists as criminals), about our immigration policy (who to let in and keep out of our country), about our views on religion (whether terrorists are more likely to come from a particular religious background), and about how we allocate our resources (how many tax dollars should go toward fighting terrorism).

15. These questions are not merely academic. Deputy Attorney General Rod Rosenstein has described DOJ's counterterrorism efforts as one of its highest priorities,[3] and DOJ devotes billions of dollars to those efforts.[4] Moreover, President Trump recently cited a DOJ and Department of Homeland Security report regarding its counterterrorism efforts to support his travel ban on people from predominantly Muslim countries. President Trump argued that the report "shows that nearly 3 in 4 individuals convicted of terrorism and terrorism-related charges are foreign-born."[5]

16. Despite the overriding importance of these questions, DOJ has kept critical pieces of information about its counterterrorism efforts—information that indisputably *does not implicate national security concerns*—out of the public's reach.

17. In particular, DOJ has refused to release *public* court docket information for *publicly* filed cases that DOJ has categorized as relating to terrorism. This docket information is maintained by DOJ and is readily available in DOJ's Legal Information Office Network System ("LIONS") database. But DOJ continues to shield it.

18. The LIONS database is the principal method by which DOJ maintains information about its investigations and prosecutions. So, for example, when a federal

---

[3] *Fiscal Year 2018 Department of Justice Budget Request: Hearing Before the Subcomm. on Commerce, Justice, Science, and Related Agencies, H. Comm. on Appropriations*, 114th Cong. (2017) (statement for the record of Rod J. Rosenstein, Deputy Att'y Gen.), *available at* http://docs.house.gov/meetings/AP/AP19/20170613/105999/HHRG-115-AP19-Wstate-RosensteinR-20170613.PDF.

[4] *See* FY 2017 AUTHORIZATION AND BUDGET REQUEST TO CONGRESS, U.S. DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION 4-16 (Feb. 2016), *available at* https://www.justice.gov/jmd/file/821341/download (requesting over $3.5 billion of funding for the Counterterrorism/Counterintelligence decision unit).

[5] *See* @realDonaldTrump, TWITTER (Jan. 16, 2018, 3:19 PM), https://twitter.com/realDonaldTrump/status/953406423177859073.

prosecutor opens an investigation against someone, she would create a record of that investigation in the LIONS database. The database would include information about the person being investigated, the nature of the potential offenses, the relevant judicial district, the name of the investigator, and the agencies or branches participating in the investigation, among other information. If the prosecutor brings charges, that fact would also be documented in LIONS, along with information about the prosecution, such as the date charges were brought, the date the action was terminated, and the disposition of the action. LIONS also would contain the public docket number for any filed case—the *only* information being sought here. LIONS therefore contains certain extremely sensitive information (such as the fact that a particular person is subject to a non-public investigation) and certain indisputably non-sensitive information (such as the fact that public charges were brought by a particular office on a particular date and the docket number of that case).

19.     Critically, DOJ also uses the LIONS database to categorize and track its various types of cases. Thus, DOJ maintains six "program categories" of cases that it classifies as related to terrorism. These categories are: "International Terrorism Incidents Which Impact U.S.," "Domestic Terrorism," "Terrorism Related Hoaxes," "Terrorism Financing," "Export Enforcement Terrorism-Related," and "Critical Infrastructure Protection." (LIONS has numerous program categories, including, for example, ones for "Trafficking in Contraband Cigarettes," "Securities Fraud," and "Organized Crime.")

20.     EOUSA already makes certain information from the LIONS database public on its "National Caseload Data" website.[6] For example, for each LIONS entry involving a public prosecution (identified by an internal U.S. Attorney's Office number), EOUSA publicizes the district where charges are brought, the date it was brought, the program category describing the type of criminal action (*e.g.*, "Domestic Terrorism" or "International Terrorism Incidents Which Impact U.S."), the final disposition of the action for the particular entry, and the date of that disposition, among other things. Of course, other information is not released, including sensitive information about non-public investigations and sealed prosecutions—none of which is at issue in this action. At issue here is the disclosure of non-sensitive information—the public docket information for publicly filed prosecutions related to terrorism—which DOJ continues to shield.

21.     This missing docket information is critical to the public's ability to understand how DOJ fights terrorism. It is the only way to link all the LIONS records DOJ considers to relate to terrorism with the public prosecutions associated with them, and, in turn, with all the information available on a public docket. Without the docket numbers, there is no effective way to track down all the cases in the LIONS database that prosecutors have categorized as related to terrorism. Without docket information, the public cannot fully and effectively review court documents to gain a comprehensive picture of what *conduct* DOJ considers to be related to terrorism. The public cannot see what *charges* DOJ brings in connection with that conduct. The public cannot see what *sentences* DOJ seeks in connection with that conduct.

22.     As of April 2018, based on the publicly available data, it appears that there have been 4,496 publicly filed cases since 2001 in the LIONS database included within one of the

---

[6]     *See National Caseload Data*, U.S. DEP'T OF JUSTICE, OFFICES OF THE U.S. ATTORNEYS, https://www.justice.gov/usao/resources/foia-library/national-caseload-data (updated May 22, 2018).

terrorism-related program categories—730 International Terrorism Incidents Which Impact U.S., 1,366 Domestic Terrorism, 610 Terrorism-Related Hoaxes, 266 Terrorist Financing, 115 Export Enforcement Terrorism-Related, and 1,409 Critical Infrastructure Protection.[7] Of those 4,496 cases, 3,347 resulted in a conviction, guilty plea, or nolo contendere on at least one charge, 724 resulted in a dismissal or determination of not guilty, and 425 were categorized as new filings. The large volume of these cases only underscores the importance of the public's ability to access docket information to understand what their government is up to—and more specifically, how DOJ prosecutes terrorism and the degree to which its efforts are successful. This is true for both cases that resulted in conviction and, given the number of cases that terminated without conviction, for cases that did not result in a conviction or are filed but still pending.

23.     Although the public cannot connect these dots without the release of this cumulative public docket information from the LIONS database, the information itself that plaintiffs seek is already public. It is on file with each particular terrorism-related case. And the information does not simply happen to be public already. It is public because there is a fundamental—indeed, a constitutional—interest in the transparency of criminal prosecutions. In other words, plaintiffs seek the release of information that is not only already public, but is already *required* to be public.

24.     The release of this already-public information as maintained in aggregate in the LIONS database also serves the core statutory interest, as reflected in FOIA, of permitting the public to understand "what their government is up to." In particular, releasing the public docket information is critical to the public's ability to understand and analyze DOJ's counterterrorism

---

[7]     The number of Critical Infrastructure Protection cases includes both cases categorized under Program Category 07H, the current program category for Critical Infrastructure Protection, and cases categorized under Program Category 07G, which was replaced by 07H in 2007.

efforts and, in turn, the numerous public policy questions that arise from terrorism and the fight against terrorism.

25. For example, although President Trump tweeted (in support of his ban on travel from predominantly Muslim countries) that "nearly 3 in 4 individuals convicted of terrorism and terrorism-related charges are foreign-born," the report he cited only covered *international* terrorism-related convictions.[8] The only way for the public to meaningfully evaluate the President's statement is if DOJ releases docket information for *all* terrorism-related cases—domestic and international. Likewise, in an era of increasing mass violence at home, a comparison of DOJ's treatment of domestic terrorism with international terrorism, and success rate in prosecuting each category of cases, will help the public assess whether the government is effectively and appropriately devoting resources to fighting terrorism overall.

26. DOJ's basis for withholding the public docket information as maintained in the LIONS database is essentially that the release of this material would constitute an unwarranted invasion of the personal privacy of third parties. But any purported value in withholding this information is belied by DOJ's own conduct in *selectively* disclosing the very information plaintiffs seek. For example, DOJ frequently issues press releases revealing public docket information in connection with prosecutions that have not yet resulted in a conviction.[9] And DOJ selectively discloses the names of defendants convicted of international terrorism-related

---

[8] DEP'T OF HOMELAND SEC. & DEP'T OF JUSTICE, EXECUTIVE ORDER 13780: PROTECTING THE NATION FROM FOREIGN TERRORIST ENTRY INTO THE UNITED STATES INITIAL SECTION 11 REPORT 2 (Jan. 2018), *available at* https://www.justice.gov/opa/press-release/file/1026436/download.

[9] *See, e.g.*, Dep't of Justice, Sayfullo Saipov Indicted On Terrorism And Murder In Aid Of Racketeering Charges In Connection With Lower Manhattan Truck Attack (Nov. 21, 2017), *available at* https://www.justice.gov/usao-sdny/pr/sayfullo-saipov-indicted-terrorism-and-murder-aid-racketeering-charges-connection-lower.

offenses.[10] Indeed, Attorney General Jeff Sessions requested and received the names of defendants convicted of international terrorism-related offenses from DOJ when he was a senator and published the information online.[11] The disclosure of this information demonstrates that DOJ does not consider privacy interests sufficient to justify withholding this data, thereby depriving the public of critical information about its prosecutions. There is no justification for revealing public docket information selectively but refusing to release it comprehensively, as plaintiffs request. Indeed, DOJ's practice of selectively releasing information about international terrorism-related convictions, but not domestic terrorism, makes the need for comprehensive data even greater, as the selectively released data permits politicians to cite potentially misleading statistics without confutation.

27. In short, without public docket information for all publicly filed terrorism-related LIONS entries, the public cannot adequately evaluate how DOJ prosecutes terrorism-related conduct or how that conduct affects key policy questions.

**B.     THE FOIA REQUEST**

28. On January 17, 2018, plaintiffs filed a FOIA Request with the EOUSA seeking:

    a. All records in the LIONS database involving public charges that are marked with at least one of the following program categories under the heading of "Terrorism":

---

[10]     *See, e.g.*, Dep't of Justice, National Security Division Chart of Public/Unsealed Terrorism and Terrorism-Related Convictions, 9/11/01- 12/31/15, *available at* http://www.humanrightsfirst.org/sites/default/files/NSD-Terrorism-Related-Convictions.pdf (updated August 26, 2016).

[11]     DEP'T OF JUSTICE, NATIONAL SECURITY DIVISION CHART OF PUBLIC/UNSEALED TERRORISM AND TERRORISM-RELATED CONVICTIONS 9/11/01-12/31/14, *available at* https://web.archive.org/web/20160906022314/http://www.sessions.senate.gov/public/_cache/files/e93b5041-aee9-4289-acd2-ee46822c402e/06.14.16-doj-nsd-list.pdf (updated August 7, 2015).

- 071 International Terrorism Incidents Which Impact U.S.
- 072 Domestic Terrorism
- 073 Terrorism Related Hoaxes
- 076 Terrorism Financing
- 077 Export Enforcement Terrorism-Related
- 07H Critical Infrastructure Protection

b. For each record identified in (1), plaintiffs specifically requested data contained in the following four LIONS field names:

- Program Category (*i.e.*, "PROG_CAT")
- USAO Number (*i.e.*, "CASEID")
- Judicial District (*i.e.*, "DISTRICT")
- Court Docket Number (*i.e.*, "COURT NUMBER")

29. The Request explained that this information was necessary in order to examine court documents, for example, to compare differences in treatment of domestic and foreign terrorism-related cases.

30. The Request also sought a fee waiver as well as expedited processing.

**C. DOJ'S RESPONSES TO THE REQUEST**

31. On January 24, 2018, DOJ denied plaintiffs' requested for expedited processing with the sole explanation that "Data is available online."

32. On February 1, 2018, DOJ granted plaintiffs' request for a fee waiver.

33. On February 6, 2018, DOJ issued a final disposition of the Request, which it characterized as a "Partial grant/partial denial," with the sole explanation that "The information you seek is located at the following website: http://www.usdoj.gov/usao/reading_room/data/CaseStats.htm" (the "Denial").

**D. PLAINTIFFS' APPEAL**

34. On February 22, 2018, plaintiffs timely appealed the denial of expedited processing and the refusal to release the requested records.

-11-

35. In their Appeal, plaintiffs explained that the requested court docket information is not, in fact, available online. In addition, plaintiffs explained why releasing the requested records advances the core purposes of FOIA—to inform the public about what "their government is up to."

36. Plaintiffs explained that the requested information is essential to the public's ability to understand and analyze how DOJ characterizes conduct as terrorism, how it prosecutes terrorism, and how terrorism and DOJ's response to terrorism affect critical public policy questions. Plaintiffs also explained that releasing such information is fully consistent with the government's past practices and would not constitute an unwarranted invasion of personal privacy because, among other reasons, the docket information is already public. The appeal letter also explained that in *ACLU v. U.S. Department of Justice*, 655 F.3d 1 (D.C. Cir. 2011), the D.C. Circuit specifically held that (1) DOJ was required to disclose some of the same information plaintiffs seek here, docket information for publicly filed cases that terminated in a conviction, and (2) the same FOIA exemptions DOJ invokes here—Exemptions 6 and 7(C)—do not apply. Plaintiffs also explained why the reasoning of a subsequent case, *ACLU v. U.S. Department of Justice*, 750 F.3d 927 (D.C. Cir. 2014), which did not require the release of information for six cases that resulted in dismissal or acquittal (out of 220 total cases), does not apply here.

E. **DOJ'S RESPONSES TO THE APPEAL**

37. On February 28, 2018, DOJ denied plaintiffs' request for expedited processing on that ground that plaintiffs' had not demonstrated an "urgency to inform the public" about a government activity and that they are not "primarily engaged in disseminating information."

38. On June 4, 2018, DOJ denied plaintiffs' appeal, refusing to release the records plaintiffs requested. DOJ's decision on appeal cited the applicability of FOIA Exemptions 6 and

7(C), providing that DOJ need not disclose materials "the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties," 5 U.S.C. § 552(b)(6), or "records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties," *id.* § 552(b)(7)(C), but otherwise contained no reasoning.

39. The records DOJ has continued to withhold are subject to FOIA and are not exempted under Exemptions 6 or 7(C). In addition, these records are critical to the public's understanding of how DOJ prosecutes terrorism-related offenses.

## CAUSE OF ACTION

40. Plaintiffs repeat, reallege and incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

41. Defendant DOJ is an agency subject to FOIA, 5 U.S.C. § 552(f).

42. Plaintiffs properly requested the Records and exhausted their administrative remedies with respect to their Request.

43. The Records are subject to FOIA and may not be withheld.

44. Defendant's failure to make the Records available violates FOIA, 5 U.S.C. § 552(a)(3)(A), and defendant's corresponding regulations.

## REQUESTED RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

    a. Declare that the requested records are public under 5 U.S.C. § 552;

    b. Order defendant to immediately process and provide all requested records;

    c. Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

d. Grant such other relief as the Court may deem just and proper.

Dated: New York, New York
August 8, 2018

WACHTELL, LIPTON, ROSEN & KATZ

By: _____

Marc Wolinsky (NY0192)
Jonathan M. Moses
Michael Feldstein
51 West 52nd Street
New York, New York  10019-6150
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
*Attorneys for The Brennan Center for Justice at NYU School of Law and Professor Charles Kurzman*